THOMAS M. LOVE, RESPONDENT, v. BLANCHE A. FETTERS, APPELLANT.

Argued March 13, 1923—Decided June 18, 1923.

A stipulation in a contract for sale of real estate that the title shall be such as a designated title company will insure, subject to their regular printed exceptions, is not satisfied by the tender of a title marketable in the ordinary sense but which such company has refused to insure except to an amount representing the value of a possible outstanding interest, and only upon deposit of an amount in cash exceeding such estimated value.

On appeal from the Supreme Court.

For the appellant, *Joseph Beck Tyler.*

For the respondent, *Joseph H. Carr.*

The opinion of the court was delivered by

PARKER, J. This is a suit by a vendee of real estate to recover back the deposit paid on account of the property, on the ground that the vendor was unable to fulfill the contract. A jury was empaneled at the trial, but the facts not appearing to be in substantial dispute, the jury was discharged by consent, and the case disposed of by the trial judge, who held that plaintiff was entitled to recover, and defendant appeals from the judgment entered on his finding.

At the time the contract was made all parties knew that there had been an outstanding undivided interest in one Edward L. Fetters, who had not been heard of for about seventeen years, and the contract of sale was specially drawn with this fact in mind. It contained provisions that the vendors should "do all in their power to perfect the title" and if they failed to do so by December 31st, 1920, the deposit should be returned and the sale declared off. A large part of the argument revolved around the question whether a marketable title had been perfected and tendered in due time; but we find it unnecessary to deal with this phase of the case because of another stipulation in the contract which we deem controlling and which was clearly not fulfilled. The contract provides that the property is to be "clear of all encumbrance and such as the Ocean City Title and Trust Company will insure, subject to their regular printed exceptions and also the reservations and restrictions of the Ocean City Association," &c. The settlement (passing of title) was "to take place at Ocean City Title and Trust Company, Ocean City, New Jersey." * * * "Said Thomas M. Love further agrees to assume the premium of the title policy which has been ordered at the Ocean City Title and Trust Co. for the issuing of a title policy covering this property, which policy will be issued to said Thomas M. Love or his mortgagee."

From the foregoing quotations one thing stands out very clearly, viz., that Love was stipulating for a title not merely marketable in the usual sense of that word, but one that the title company "would insure subject to their regular printed exceptions." This, of course, points to the ordinary printed form used by that company, and calls for a title that said company will insure on that form without qualification (except the restrictions mentioned above) and, as seems entirely clear to us, in the ordinary course of its operations. No such title was ever tendered; for the title company refused to insure it in regular course. It is true that without the knowledge of plaintiff, defendants, or some of them, arranged with that company that in consideration of an

indemnity deposit of $2,500, the company would insure for $2,000 without excepting the interest of Edward; but this is very far from making the title such as the company would insure subject to its regular printed exceptions. It is a title which the company would not ordinarily insure, but agreed to insure as an exception because of an indemnity covering all probable loss. As the trial judge remarked, "Any title company would undertake an obligation to pay a contingent $2,000 upon a deposit of $2,500, of which sum the insurer should have the use. This was not *bona fide* insurance subject to the regular printed exceptions of the company."

As we have said, plaintiff was not contracting for a marketable title in the ordinary sense; he was stipulating for a title which the local company would insure, so that he could turn over the policy to a mortgagee, or a purchaser.

Contracts whose performance is conditioned on the approval of third parties are common enough. The approval of an architect or engineer in a working contract is a matter of every-day stipulation. Municipal bond issues are underwritten by bankers subject to the condition precedent that the legality of the bonds shall be passed on by their counsel, or counsel agreed on. In a reported Texas case, the approval of purchaser's attorneys of the title to land was a condition of performance and held controlling in the absence of bad faith. *Roberts* v. *Atwood,* 188 *S. W. Rep.* 1014. Arbitration contracts are in the same general class. The validity of such stipulations is beyond dispute, and where the parties have agreed to them they must be bound by them in the absence of fraud, of which there is no claim in this case by defendants.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ. 12.

*For reversal*—None.